**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **Ted Russell Schwartz Murray,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:13-0032** |
| | § | |
| **United States of America** | § | |
| | § | |
| | § | |
| **Respondent.** | § | |

## <u>ORDER</u>

Pending before the Court is Petitioner Ted Russell Schwartz Murray ("Murray" or "Petitioner")

Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (the "Motion to

Vacate"). (**Instrument No. 398**). Also before the Court is the Respondent United States of America's

(the "Government" or "Respondent") Motion to Dismiss the § 2255 Motion (the "Motion to Dismiss")

(**Instrument No. 404**). After a careful review of the motions; response, reply; record; and the applicable

law, the Court **DENIES** the Petitioner's Motion to Vacate (**Instrument No. 398**) and the Court

**GRANTS** the Respondent's Motion to Dismiss (**Instrument No. 404**).

## I.

## A.[1]

Murray was the majority shareholder, President, and Chief Executive Officer (CEO) of Premiere

Holdings ("Premiere"), which was created by merging Murray's solely-owned company, Money

Mortgage Corporation of America, with David Lapin ("Lapin") & Jeffrey Wigginton ("Wigginton"), an

asset management company owned by his codefendants, David Lapin and Carl Wigginton. Premiere

solicited money from investors to fund real estate loans through its P72 Program. Murray and his

---

[1] Taken verbatim from the 5th Circuit. *United States v. Murray*, 648 F.3d 251, 252-53 (5th Cir. 2011) cert. *denied*, 132 S. Ct. 1065 (2012).

codefendants falsely promised to give investors an interest in safe and secure real estate investments that yielded 12% returns.

In many instances, Premiere lent to highly risky borrowers and did not obtain the high-quality collateral promised to secure the loans. Also, Murray charged a 25% loan origination fee, a material fact that was never disclosed to investors. Because most of the loans Premiere made were nonperforming, later investors' funds were used to pay the promised 12% returns to earlier investors, thus hiding Premiere's true financial condition.

By September 2001, several of the largest loans were in default and Premiere could not recruit enough new investors to hide the losses. Murray and his codefendants used the economic decline following the September 11 terrorist attacks as an excuse for the failure of the P72 Program, and Premiere filed for Chapter 11 bankruptcy on October 2, 2001. At that time, Premiere had outstanding loans totaling $165 million. A group of the defrauded investors (who banded together and asserted their claims under the name Presidential Partnership), Lapin, and the bankruptcy trustee took over the loans in an attempt to recover any outstanding value remaining in the underlying collateral.

### B.

On July 19, 2006, the Government filed a two-count criminal indictment in the United States District Court for the Southern District of Texas, in case number H-CR-06-247, charging the Petitioner with counts 1 and 2 for making and subscribing a false return, in violation of 26 U.S.C. § 7206(1). (H-06- CR-0247, Instrument No. 177 at 4). The offenses were alleged to have occurred on July 20, 2000 (Count 1); and August 31, 2001 (Count 2). (H-06- CR-0247, Instrument No. 177 at 4).

On August 30, 2006, a twenty four-count criminal indictment was filed in the United States District Court for the Southern District of Texas, in case number H-CR-06-303,  naming Murray, David Isaac Lapin, and Jeffrey Carl Wigginton, Sr., as defendants. (H-06- CR-0247, Instrument No. 177 at 4). In count 1, the Government alleged conspiracy to violate the laws of the United States, through the

commission of mail fraud and securities fraud, in violation of 18 U.S.C. § 371, which were alleged to have occurred from about on or before March 1996, and continuing through about December 2001; in counts 2-15, the Government alleged mail fraud, aiding and abetting, in violation of 18 U.S.C. §§ 1341 and 2, which were alleged to have occurred between August and October of 2001; in counts 16-20, the Government alleged securities fraud, aiding and abetting, in violation of 18 U.S.C. § 78j(b), 78ff, and 18 U.S.C. § 2, alleging to have occurred in August and September of 2001; and in counts 21-24, the Government alleged money laundering, aiding and abetting, in violation of 18 U.S.C. §§ 1957 and 2, alleged to have occurred in September of 2001. (H-06- CR-0247, Instrument No. 177 at 4). On November 14, 2006, the Court consolidated case number H-CR-06-247 and case number H-CR-06-303 for administrative purposes. (H-06- CR-0247, Instrument No. 177 at 6).

On September 8, 2008, Murray appeared with counsel before the Court for the commencement of a jury trial. (H-06- CR-0247, Instrument No. 177 at 4). On October 21, 2008, a jury convicted him of the crimes alleged in counts 1-20 of the indictment in H-CR-06-303, and a guilty verdict was returned by the jury as to each of Counts 1 and 2 of the indictment in H-06- CR-0247. (H-06- CR-0247, Instrument No. 177 at 4-5). Additionally, on October 21, 2008, the Court ordered a Presentence Report and Murray was released on bond prior to the imposition of sentence. (H-06- CR-0247, Instrument No. 177 at 5; Instrument No. 129). On December 1, 2008, the Court remanded Murray to the custody of the United States Marshall Service (USMS) pending sentencing. (H-06- CR-0247, Instrument No. 177 at 5; Instrument No. 187 at 3).

At sentencing, on December 2, 2009, the Court used the 2001 edition of the United States Sentencing Commission Guidelines Manual ("U.S.S.G.") to calculate the Petitioner's range of punishment. (H-06- CR-0247, Instrument No. 177 at 17). The Court found that as to all counts, the grouping rules contained in U.S.S.G. § Chapter Three, Part D, were applicable. (H-06- CR-0247, Instrument No. 177 at 17).  The Court found that Murray had a base offense level of 6 under U.S.S.G. § 2B1.1(a). (H-06- CR-0247, Instrument No. 177 at 18). Based on the Court's finding that the amount of

loss was $84 million, Murray's offense level was raised by 24 pursuant to U.S.S.G. § 2B1.1(b)(1)(M). (H-06- CR-0247, Instrument No. 177 at 18). Then, the Court increased Murray's offense level by 4 because the Court found that he was a leader or organizer. U.S.S.G. § 3B1.1(a); (H-06- CR-0247, Instrument No. 177 at 18). After additional enhancements, the Court found that Murray's total offense level was 43 with a criminal history category of I. (5th Cir. Case No. 09-20813; H-06- CR-0247, Instrument No. 177 at 19). With a total offense level of 43 and a criminal history category of I, the guidelines recommended a term of imprisonment of 360 months to life but the Court imposed a below-guidelines sentence of 240 months imprisonment with three years of supervised release. (Instrument No. 187 at 3-4).

On July 27, 2011, Murray appealed from the judgment conviction to the United States Court of Appeals for the Fifth Circuit. (Instrument No. 398 at 2). Murray raised three issues: (1) whether the application of the 2001 version of the Federal sentencing Guideline manual violated the Ex Post Facto Clause; (2) whether the district court improperly calculated the amount of loss under U.S.S.G. §2B1.1(b)(1); and (3) whether the district court's application of the leader-organizer sentencing enhancement, under U.S.S.G. §3B1.1, was improper. (Instrument No. 398 at 2). The Fifth Circuit affirmed this Court's decision. (Instrument No. 398 at 2). Undeterred, Murray then filed a petition for certiorari in the United States Supreme Court asking the Court to determine whether the ex post facto clause prohibits the application of a new advisory guideline to a crime committed before the guideline's effective date, after the decision in *United States v. Booker*, 543 U.S. 220 (2005) made the guidelines advisory rather than mandatory. On January 9, 2012, the Supreme Court denied certiorari. *Murray v. United States*, 132 S. Ct. 1065 (2012). Murray now seeks a writ of habeas.

## C.

On January 4, 2013, Murray filed this instant Motion to Vacate, Set Aside or Correct Sentence. (Instrument No. 398). In the Motion, Murray claims that: (1) his counsel was constitutionally ineffective at the guilt-innocence phase of his trial; (2) his counsel was constitutionally ineffective at the sentencing

4

phase of his trial; (3) the assessment of a 20 year sentence violates his constitutional rights; and (4) new evidence presented to the Court at the restitution hearing established that the loss amount used at sentencing was erroneous. (Instrument No. 398 at 6-13).

As for the first claim of ineffective assistance of counsel, Murray contends that his counsel was constitutionally ineffective at the guilt-innocence phase of his trial because counsel: (a) failed to move for severance; (b) failed to object to evidence of Murray's gambling habits; (c) failed to strike a juror who had heard unfavorable things about the Petitioner; (d) failed to strike a juror who was applying for a job with the FBI; (e) had health issues that compromised his ability to zealously advocate on Petitioner's behalf; and (f) failed to object to highly prejudicial and irrelevant evidence about how Murray's conduct adversely impacted a church.

As for the second claim of ineffective assistance of counsel, Murray contends that his counsel was constitutionally ineffective during the sentencing phase of his trial because counsel: (a) failed to object to the sentencing court calculating Petitioner's range of punishment using a version of the guideline that went into effect after the Petitioner's offensive conduct occurred;  (b) failed to argue for a loss calculation based on the calculation of the subsequent restitution order; and (c) failed to object to the leader-organizer enhancement.

In Murray's third ground, Murray alleges that assessing a 20 year sentence violates his constitutional rights because his co-conspirator plead and received a three year sentence in prison As such, Murray argues that his twenty year sentence is a punishment for deciding to have a trial instead of agreeing to a plea.

In Murray's final ground, Murray alleges that new evidence presented to the Court at the restitution hearing established that the loss amount used at sentencing was erroneous. In particular, Murray argues that counsel was constitutionally deficient for failing to argue for a methodology for computing a loss amount for purposes of calculating the offense.

On March 20, 2013, the Government filed a Motion to Dismiss Petitioner's § 2255 Motion. (Instrument No. 404). In the Motion to Dismiss, the Government argues that Petitioner's Motion is meritless.

As to the claim of ineffective assistance during the guilt-innocence phase, the Government contends that the Petitioner cannot prevail on his claims unless he can show that (1) counsel's performance was deficient and (2) the deficiency caused prejudice to Murray. According to the Government, Murray cannot make this showing. Specifically, the Government contends that: (a) counsel's failure to move for severance was not deficient because the evidence of guilt weighs heavily against him; (b) that counsel's failure to object to evidence of Murray's gambling habits did not render his assistance constitutionally ineffective because the gambling evidence was inextricably linked to evidence of the crime. Therefore, the failure to object was neither deficient nor prejudicial; (c) counsel's failure to strike a juror was not prejudicial because there was no evidence that this juror could not honor his obligation to impartially weigh the facts of this case; (d) counsel's failure to strike a juror applying for the FBI was not prejudicial because there was no evidence that this juror could not honor his obligation to impartially weigh the facts of this case; (e) counsel's health did not cause compromise counsel ability to provide constitutionally effective assistance; and (f) that counsel's failure to object to evidence and a testimony about Murray's conduct concerning a church was not deficient because it showed Petitioner's modus operandi.

As to the claim of ineffective assistance during the sentencing phase, the Government again contends that the Petitioner cannot prevail on his claims unless he can show that (1) counsel's performance was deficient and (2) the deficiency caused prejudice to Murray. According to the Government, Murray cannot make this showing because he cannot show that : (a) counsel's failure to object to the use of a sentencing guideline that went into effect after the commission of the offense was not constitutionally ineffective assistance of counsel because crimes continued through the new sentencing guidelines; (b) counsel's failure to argue for a loss calculation based on the calculation of the

subsequent restitution order was not constitutionally ineffective assistance of counsel because the sentencing court's calculation was reasonable; and (c) counsel's failure to object to the application of the leader-organizer enhancement was not constitutionally ineffective because there was substantial evidence that the Petitioner qualified for the sentencing adjustment.

As for ground three of the Motion to Vacate, the Government contends that the challenge to the 20 year sentence was raised and rejected on appeal and should be dismissed without merit for the same reason set out in the court of appeals' opinion, (Instrument No. 404 at 37);

Finally, with respect to the fourth ground of the Motion to Vacate, the Government contends that the "loss" valuation for the purposes of the sentencing guideline is different from the loss valuation for the purposes of "restitution" in that the loss valuation for the sentencing guidelines is based on a different statute and methodology than the loss valuation for the purposes of calculating restitution. (Instrument No. 404 at 32).

On May 1, 2013, Murray filed a Reply to the Government's Motion to Dismiss. (Instrument No. 407). In the Reply, Murray once more contends on three grounds of ineffective assistance of counsel: (1) the unchallenged juror; (2) unilaterally continuing with the trial, without client disclosure or input, after becoming medically incapacitated; and (3) failure to object to the use of the wrong sentencing guidelines. (Instrument No. 407 at 1-2).

## II.

The Petitioner, here, has filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (Instrument No. 398). Section 2255 provides in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence. 28 U.S.C. § 2255.

Ordinarily, "after a conviction and exhaustion or waiver of any right to appeal, [the] court is entitled to presume that the defendant stands fairly and finally convicted." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (citing *United States v. Frady*, 456 U.S. 152, 164 (1982)). As a result, "relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994) (*quoting United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam)); *see also United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992). When raising issues of jurisdictional or constitutional magnitude for the first time on collateral review, a defendant ordinarily must show both cause for his procedural default and actual prejudicial resulting from the error. *United States v. Cervantes*, 132 F.3d 1106, 1009 (5th Cir. 1998). "This cause and actual prejudicial standard presents a significantly higher hurdle than the plain error standard [applied] on direct appeal." *Pierce*, 959 F.2d at 1301 (5th Cir. 1992) (citing *Frady*, 456 U.S. at 166).

In this case, Murray is proceeding *pro se*. "*Pro se* habeas petitions are not held to the same stringent and rigorous standards as are pleadings filed by lawyers." *Hernandez v. Thaler*, 630 F.3d 420, 427 (5th Cir. 2011); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (a "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."). Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them. *Hernandez*, 630 F.3d at 427; *United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997). "At the same time, however, mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam); *United States v. Pineda,* 988 F.2d 22, 23 (5th Cir.1993).

Rule 8 of the Rules Governing Section 2255 Proceedings provides that "[i]f the motion is not dismissed, the judge must review the answer, any transcript and records of prior proceedings, and any materials submitted . . . to determine whether an evidentiary hearing is warranted." R. Governing § 2255

Proc. U.S. Dist. Cts. 8; *United States v. Cavitt*, 550 F.3d 430, 441-42 (5th Cir. 2008). An evidentiary hearing is not warranted when the motion, files, and records of the case conclusively show that the defendant is not entitled to relief. *See United States v. Samuels,* 59 F.3d 526, 530 (5th Cir. 1995); *United States v. Smith*, 915 F.2d 959, 964 (5th Cir. 1990) ("If the record is clearly adequate to dispose fairly of the allegations, the court need inquire no further"). Nor is an evidentiary hearing necessary when the Petitioner's "showing is inconsistent with the bulk of h[is] conduct or otherwise fails to meet h[is] burden of proof in the light of other evidence in the record." *Cervantes*, 132 F.3d at 1110; *see also Smith*, 915 F.2d at 964. The record in this case, as discussed *infra*, establishes that the Petitioner is not entitled to the relief he seeks. As such, the record is adequate to dispose of the Petitioner's claims fully and fairly. Accordingly, an evidentiary hearing is not necessary.

## III.

In the motion, Petitioner contends that his conviction is unconstitutional because his counsel was constitutionally ineffective. The standard for judging the performance of counsel set out in *Strickland v. Washington*, 466 U.S. 668 (1984), requires the petitioner to prove (1) counsel's performance was deficient and (2) that deficiency prejudiced the Petitioner. *Strickland*, 466 U.S. at 697; *accord United States v. Cavitt*, 550 F.3d 430, 440 (5th Cir. 2008). This means that Murray must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentencing. *United States v. Dovalina*. 262 F.3d 472, 474-75 (5th Cir. 2001).

Deficient performance is established by "show[ing] that counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688; *Cavitt*, 550 F.3d at 440. That determination is based upon the law as it existed at the time of trial. *Lockhart v. Fretwell*, 506 U.S. 364, 371-72 (1993). When determining whether counsel was deficient, the Court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct." *Hernandez v. Johnson*, 213 F.3d 243, 249 (5th Cir. 2000). Given that, the Court indulges "a

strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance … [in order to prevail] the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689; *Cavitt*, 550 F.3d at 440.

To prove prejudicial, the Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Cavitt*, 550 F.3d at 440. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. This is a heavy burden which requires a "substantial," and not just a "conceivable," likelihood of a different result. *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011); *see also Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011).

A defendant must satisfy both prongs of the *Strickland* test in order to prevail on an ineffective assistance claim. *Strickland,* 466 U.S. at 697; *Riley v. Cockrell*, 339 F.3d 308, 315 (5th Cir. 2003). A court deciding an ineffective assistance of counsel claim is not required to address these prongs in any particular order. *Strickland,* 466 U.S. at 697. If it is possible to dispose of an ineffective assistance of counsel claim without addressing both prongs, "that course should be followed." *Strickland,* 466 U.S. at 697.

## 1.

In Ground One of the Motion to Vacate, Murray contends that his counsel was constitutionally ineffective at the guilt-innocence phase of his trial because counsel: (a) failed to move for severance; (b) failed to object to evidence of Murray's gambling habits; (c) failed to strike a juror who had heard unfavorable things about the Petitioner; (d) failed to strike a juror who was applying for a job with the FBI; (e) had health issues that compromised his ability to zealously advocate on Petitioner's behalf; and (f) failed to object to highly prejudicial and irrelevant evidence about how Murray's conduct adversely impacted a church.

*a.*

In the first claim of ground one of the Motion to Vacate, Murray alleges that his counsel failed to move for a severance of the tax counts from the conspiracy, mail fraud and securities fraud counts. (Instrument No. 398-1 at 5). According to Murray, the tax counts covered completely different conduct than the fraud and conspiracy counts and therefore allowing the tax counts to be tried with fraud and conspiracy counts gave the Government the opportunity to present prejudicial evidence of his gambling problems that would otherwise be inadmissible. (Instrument No. 398-1 at 5). According to Murray, this adverse character evidence, otherwise inadmissible, allowed the jury to find him guilty on the fraud and conspiracy counts. (Instrument No. 398-1 at 5).

On review, the Court finds that Murray fails to demonstrate that counsel failure to sever the tax claims from the fraud claims was constitutionally ineffective. To prove that counsel was constitutionally ineffective, Petitioner must show that counsel was deficient. Deficient performance is established by "show[ing] that counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688; *Cavitt,* 550 F.3d at 440. That determination is based upon the law as it existed at the time of trial. *Lockhart,* 506 U.S. at 371-72. When trial occurred and continuing through the present, the law of this circuit held that when severance is not required as a matter of law, counsel's failure to seek such relief does not constitute incompetency. *United States v. Garza,* 563 F.2d 1164, 1166 (5th Cir. 1977). The Court noted that when severance is not required as a matter of law, the failure to seek such relief can amount to nothing more than a "mistaken tactical decision." *Garza,* 563 F.2d at 1164. Accordingly, even if the Court assumes that counsel's failure to sever was erroneous, it does not amount to constitutionally deficient performance. Therefore, the Petitioner has failed to show that counsel was constitutionally ineffective.

Moreover, even if the Court assumes that counsel's failure to sever the tax claims from the fraud claims was deficient, it was not prejudicial. In this case, the evidence clearly demonstrated that Petitioner was guilty of both the tax claims and the fraud claims. The Petitioner has not presented any

evidence that the jury was unable to separate the evidence against the Petitioner related to the tax charges and the evidence related to the fraud charges. Instead, Plaintiff merely relies on bald assertions that the evidence related to the tax charges tainted the jury's impression of the Petitioner such that he was unable to get a fair trial. Unfortunately for Petitioner, federal courts do not "consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . mere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Smallwood v. Johnson*, 73 F.3d 1343, 1351 (5th Cir. 1996). As such, Petitioner has failed to show that he was prejudiced by counsel's failure to sever. As such, the Petitioner has not demonstrated how the severance of the claims would have engendered a substantial likelihood of a different result. *Richter*, 131 S. Ct. at 787.

*b.*

In the second claim of ground one of the Motion to Vacate, Murray alleges that counsel's failure to object to the introduction of evidence related to Petitioner's gambling habits amounted to ineffective assistance of counsel because the gambling evidence was irrelevant, inflammatory, and highly prejudicial thereby demanding an objection.  (Instrument No. 398-1 at 11).

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance was deficient and (2) that the deficiency prejudiced the Petitioner. *Strickland*, 466 U.S. at 697; *Cavitt*, 550 F.3d at 440. Petitioner here cannot demonstrate either prong of the *Strickland* inquiry. First, counsel's failure to object to the evidence was not deficient. This is especially true in this case, where: (1) there was a substantive overlap between the conduct that gave rise to the tax claims and the conduct giving rise to the fraud claims, *see* (Instrument No. 245, at 11); (2) counsel moved for an in limine instruction limiting the introduction of gambling evidence, *see* (Instrument No. 89), which the Court denied (Instrument No. 105); and (3) counsel explained in his closing arguments that the evidence of the Petitioner's gambling problems were not relevant to the question of guilt or innocence. (Instrument No. 267, at 27). Accordingly, Petitioner has not shown that counsel's decision to file a motion in limine and offer closing arguments to mitigate the potency of the

gambling evidence rather than object to the introduction of the evidence at trial did not fall within the broad range of reasonable assistance. *See Dovalina*. 262 F.3d at 474-75. Second, Petitioner has not shown that the failure to object was prejudicial. Again the record here indicated that the evidence of the gambling was related to the tax and fraud counts alleged in the indictment. Therefore, counsel's failure to object to the introduction of this evidence does not appear to be prejudicial nor has the Petitioner demonstrated how counsel's assertion of an objection would have created a reasonable probability that the result of the proceeding would have been different. Accordingly, he has failed to demonstrate that counsel was constitutionally ineffective.

*c.*

In the third claim to ground one of the Motion to Vacate, Murray claims that counsel was constitutionally ineffective when he failed to motion for the Court to remove a juror from the jury who reported having been told some negative things about Murray in the middle of the trial. On review, the Court finds that the Petitioner's claim fails because he cannot show that counsel's performance was constitutionally defective nor can he show that the failure was prejudicial. In this case, the Court discussed the incident and established that the juror did not have any further discussion with the person who said to the juror, "I hope you're not on that Ted Murray crook's case. I just read about it in the paper." The Court said to the juror:

> [I]t's not that much of a concern to me that someone – that you would have even heard or read something about it or that someone commented to you about it. The only way that it would be a concern to me is if you say to me that something that you've read or seen or heard outside the courtroom would keep you from judging this case based on what you hear in the courtroom, Do you believe – (JUROR: Yeah.] Do you – do you think that you'll be able to evaluate the case based on what you've heard in the courtroom?

(Instrument No. 235 at 4; Instrument No. 407-1 at 3-6). The juror confirmed that she could do that. (Instrument No. 235 at 4; Instrument No. 407-1 at 6). Counsel knew about the incident and did not consider it "highly prejudicial;" therefore, the decision to continue with the juror is not "outside the

broad range of what is considered reasonable assistance and that [the] performance led to an unfair and unreliable conviction and sentence." *Dovalina*, 262 F.2d at 474-75.

Moreover, Petitioner cannot show that counsel's failure prejudiced him. The Court examined the juror to ensure that she was still capable of rendering a fair and impartial result based on the evidence presented to her in the course of the trial. After this examination, the Court determined that the juror was capable of executing her responsibilities as a juror. This is not a case where the juror indicated that she had a bias towards the Petitioner or could not otherwise render an impartial verdict, therefore Petitioner's reliance on *Virgil v. Dretke*, 446 F.3d 598 (5th Cir 2006) and *Hughes v. United States*, 258 F.3d 453 (6th Cir. 2001) is misplaced. In both of those cases, the jurors stated during voir dire that they could not render a fair and impartial verdict. Because the juror here was able to fairly and impartially assess the facts of the case, the Petitioner cannot prove that there is a reasonable probability that but for counsel's failure to motion for removal, the result of the proceeding would have been different. Accordingly, Petitioner has failed to prove that his counsel was constitutionally ineffective.

*d.*

In the fourth claim of ground one of the Motion to Vacate, Murray alleges that counsel's failure to motion to remove a juror who was seeking a position with the FBI amounted to ineffective assistance of counsel. On review, the Court finds that the Petitioner's claim fails because he cannot show that counsel's performance was constitutionally defective nor can he show that the failure was prejudicial. In this case, Counsel and the prospective juror engaged in a conversation in which counsel asked the perspective juror if "working for the federal law enforcement agency or attempting to would influence you in any way to believe that these people were telling the truth more than the people over on this side," perspective juror replied, "No, sir," Counsel then asked, "You could be fair and give us the same benefit of the doubt that you would give to the Government," perspective juror replied, "Yes, sir." (Instrument No. 226 at 102-03).  After this exchange, counsel was satisfied that the juror could render an impartial verdict. This determination does not appear to fall "outside the broad range of what is

considered reasonable assistance and that [the] performance led to an unfair and unreliable conviction and sentence." *Dovalina*, 262 F.2d at 474-75. Accordingly, counsel's failure to seek the removal of the juror did not amount to constitutionally deficient counsel. Moreover, Petitioner's claim of ineffective assistance of counsel fails because counsel's failure to object did not prejudice the Petitioner.  Again, in the course of counsel's examination of the juror, the juror explained that he would be able to render a fair and impartial decision based on the facts presented in this case and that his potential affiliation with a federal government agency did not compromise his ability to impartial judge the facts of the case. Because the juror indicated that he was able to faithfully discharge his duties as a juror, Petitioner cannot show that but for counsel's failure to object there is a reasonable probability that the outcome of the proceeding would have been different. Therefore, Petitioner has failed to establish that counsel's strategic decision prejudiced him and as a result Petitioner has failed to show that counsel was constitutionally ineffective. *Richter*, 131 S. Ct. at 787.

*e.*

In the fifth claim of ground one of the Motion to Vacate, Murray alleges that counsel was constitutionally ineffective when he decided to continue the trial without informing him that he had been in the hospital or that the Court was willing to consider other alternatives to an immediate procession through the trial because counsel was not able to adequately prepared for trial and the modifications to the trial schedule that the Court made to accommodate counsel's illness "effectively told the jury that their time was being wasted as a result of defense counsel's health conditions," which "predisposed" to find Murray guilty. (Instrument No. 398-1 at 19).

Again, Murray fails to show how counsel's decision to proceed was deficient or how that decision prejudiced the Petitioner. First, there is nothing in the record to suggest that counsel's health issues impeded his ability to zealously advocate on behalf of his client. In fact, at the conclusion of trial Petitioner moved for a new trial on the basis that counsel was not able to provide adequate representation in light of his illness, this Court dismissed the claim as meritless. (Instrument No. 144).

Now, as then, the Court rejects the Petitioner's suggestion. In Murray's Reply he relies on *Pilchak*, which states that "representation by lawyer with Alzheimer's disease entitles defendant to writ relief regardless of whether she could show cause and prejudice for any procedural default" (Instrument No. 407 at 13); *See Pilchak v. Camper*, 935 F.2d 145 (8th Cir. 1991). This is distinguishable because Alzheimer's disease affects cognitive abilities. Here, counsel had ulcer issues, which has no effect on his cognitive abilities to represent Murray. Counsel was confident that he could continue this case once he was released from the hospital. Because Plaintiff has not shown that counsel's health issues impeded his ability to adequately represent Petitioner, the Petitioner has not shown that counsel's failure to continue the trial was deficient.

Second, Murray cannot show that the failure to continue the trial was prejudicial. Murray has not offered any competent evidence that the jury felt that their time was being wasted nor has he offered any competent evidence that the jury was predisposed to find him guilty. During trial, jurors are instructed at the beginning of trial that "You've taken an oath which states that you're going to decide this case based on the evidence and the evidence alone, and for that reason, we do not desire that you decide who you like and who you dislike and try to decide the case accordingly." (Instrument No. 226 at 127). Jurors are presumed to follow instructions. *See Richardson v. Marsh,* 481 U.S. 200, 211 (1987). Therefore, even if the Court assumes that the jury somehow believed that the Petitioner was wasting their time, this belief would not have infected the jury decision-making process. Therefore, Petitioner cannot show that there is a reasonable probability that but for counsel's failure to continue the result of the proceeding would have been different. As such, Petitioner cannot show that his counsel was constitutionally ineffective.

*f.*

In the sixth claim of ground one of the Motion to Vacate, Murray alleges that Lena Jones's ("Jones") testimony was irrelevant and should have been excluded under Rules 402 and 403 of the Federal Rules of Evidence since it had no probative value and was highly prejudicial. (Instrument No 398-1 at 26). Murray also argues that it was inadmissible character evidence under Rule 404, but counsel

failed to object. (Instrument No. 398-1 at 26). On review, the Court finds that Petitioner cannot show that counsel's failure to object amounted to ineffective assistance of counsel because the Petitioner cannot show that counsel's failure to object was deficient or prejudicial. If the objection was meritless, then Petitioner cannot show that he was prejudiced by the failure to object. Moreover, if the objection is meritless, then Petitioner cannot show that counsel's failure to make such an objection was qualify as deficient assistance. Accordingly, the Court turns now to the merits of the evidentiary challenges.

Rule 402 and 403, allow for the admission of evidence if that evidence has a tendency to make a material fact more or less probable than it would be without that evidence and the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 401-403. Under Rule 404(b), "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Rule 404(b) is only implicated when the offered evidence is extrinsic; evidence intrinsic to the charged offense does not implicate the rule. *See, e.g., United States v. Powers*, 168 F.3d 741, 749 (5th Cir. 1999). Evidence is intrinsic when it is inextricably intertwined with the charged offense, when both acts are part of the same criminal episode, or when the "other act" was a necessary preliminary step towards the completion of the charged crime. *United States v. Sumlin*, 489 F.3d 683, 689 (5th Cir. 2007). It is axiomatic that "there is a component of misplaced trust inherent in the concept of fraud," *See, e.g., United States v. Wright*, 496 F.3d 371, 377 (5th Cir. 2007) ("In every successful fraud the defendant will have created confidence and trust in the victim ... [including] where trust is created by the defendant's personality or the victim's credulity"). Whatever a person may do to gain investors' trust and money, whatever means he may use to lure victims into his confidence is evidence that is intrinsic to the fraud. Such intrinsic evidence is generally admissible "so that the jury may evaluate all the circumstances under which the defendant acted." *United States v. Royal*, 972 F.2d 643, 647 (5th Cir. 1992) (quoting *United States v. Randall*, 887 F.2d 1262, 1268 (5th Cir. 1989)). Based on the law, it is clear that the evidence admitted by Jones was intrinsic to the case to determine how

Murray gained victim's trust, this information was relevant to the ultimate question of Murray's guilt, and the inclusion of this information was not substantially outweighed by the prejudice occasioned by its inclusion. Accordingly, the inclusion of this evidence was proper. Because the evidence was properly included in the record, Petitioner cannot show that counsel's failure to object to the inclusion of the evidence was deficient. Moreover, Petitioner cannot show but for the failure to object to the evidence, there is a reasonable probability that the evidence would have been admitted and the outcome of the proceeding different. *Strickland*, 466 U.S. at 668. Accordingly, Murray has not demonstrated that his counsel was constitutionally ineffective.

*g.*

In Ground One of the Motion to Vacate, Murray contends that his counsel was constitutionally ineffective at the guilt-innocence phase of his trial because counsel: (a) failed to move for severance; (b) failed to object to evidence of Murray's gambling habits; (c) failed to strike a juror who had heard unfavorable things about the Petitioner; (d) failed to strike a juror who was applying for a job with the FBI; (e) had health issues that compromised his ability to zealously advocate on Petitioner's behalf; and (f) failed to object to highly prejudicial and irrelevant evidence about how Murray's conduct adversely impacted a church. The Court has rejected each basis offered. As such, Murray's claim of ineffective assistance of counsel in ground one as a matter of law is **DENIED**.

2.

Murray contends that his counsel was constitutionally ineffective during the sentencing phase of his trial because counsel: (a) failed to object to the sentencing court calculating Petitioner's range of punishment using a version of the guideline that went into effect after the Petitioner's offensive conduct occurred; (b) failed to argue for a loss calculation based on the calculation of the subsequent restitution order; and (c) failed to object to the leader-organizer enhancement.

*a.*

In the first claim of ground two of the Motion to Vacate, Murray claims that counsel's failure to object to the use of the wrong guidelines manual was constitutionally ineffective assistance of counsel. (Instrument No. 398-1 at 28). On review, the Court finds that Petitioner cannot show that his counsel's failure to object amounted to constitutionally defective performance. The Ex Post Facto Clause forbids Congress from enacting a law that "'imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Weaver v. Graham*, 450 U.S. 24, 28 (1981); *United States v. Arledge*, 553 F.3d 881, 897 (5th Cir. 2008). For the Sentencing Guidelines to apply *ex post facto*, they must apply to events occurring before their enactment and must disadvantage the offender affected by their application. *Arledge*, 553 F.3d at 897. In most instances, the Sentencing Guidelines in effect at the time of conviction apply. However, the Guidelines provide that if their application would violate the Ex Post Facto Clause, the court must use the Guidelines in effect on the last date the offense of conviction was committed. U.S.S.G. § 1B1.11(b)(1) (2001). The Guidelines further explain that

> the last date of the offense of conviction is the controlling date for ex post facto purposes. For example, if the offense of conviction (i.e., the conduct charged in the count of the indictment or information of which the defendant was convicted) was determined by the court to have been committed between October 15, 1991 and October 28, 1991, the date of October 28, 1991 is the controlling date for ex post facto purposes.

§ 1B1.11(b) cmt. 2. The indictment in the conspiracy case (H-06-CR-303) clearly states that "[f]rom about on or before March 1996, and continuing through about December 2001, in the Houston Division of the Southern District of Texas, and elsewhere [Petitioner]…and others…did knowingly and intentionally combine, conspire, confederate, and agree to…defraud." (H-CR-06-303, Instrument No. 1, at 3). The investigate findings in the PSR noted that the conspiracy lasted from March 1996 to December 2001. (H-CR-06-247, Instrument No. 177, at 11).[2] Accordingly, there was evidence in the

---

[2] When making factual findings for sentencing purposes, a district court "may consider any information which bears sufficient indicia of reliability to support its probable accuracy." *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012)

record that the last date of the conviction continued until December 2001. As such, any challenge to the use of the 2001 guidelines would have been futile. Therefore, counsel's failure to challenge the district court's use of a later sentencing guideline was not deficient. In essence, counsel decided not to mount a meritless challenge, this does not fall "outside the broad range of what is considered reasonable assistance and that [the] performance led to an unfair and unreliable conviction and sentence." *Dovalina*, 262 F.2d at 474-75.

*b.*

Next, in the second claim of ground two for the Motion to Vacate, Murray claims that counsel was constitutionally ineffective when he failed to adequately challenge the PSR's and the Government's proposed loss amount. Specifically, he contends that counsel presented no witness, expert testimony, or other evidence to challenge the loss amount finding. At the sentencing hearing, the district court used a loss calculation formula that resulted in an $84 million loss calculation. At a restitution hearing, which followed the sentencing, the Court calculated a loss amount of $17 million. According to Murray, his counsel at sentencing was ineffective because he failed to argue that the loss amount should be calculated as it was during the restitution hearing. On review, the Court disagrees. Once again, Murray cannot show that his counsel was constitutionally deficient. Although generally the calculation of the amount of loss is a factual finding reviewed for clear error, the method used to calculate loss, which, as an application of the guidelines, is reviewed de novo. Nonetheless, the guidelines emphasize the deference that must be shown to the sentencing judge, who is in a unique position to assess the applicable loss, so this court need only determine whether the district court made "a reasonable estimate of the loss." *United States v. Hebron*, 684 F.3d 554, 560 (5th Cir. 2012).

---

Generally, a PSR bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations. *Harris*, 702 F. 3d at 230.

First, the loss amount for the purposes of sentencing is calculated in a very different way than the loss amount that is calculated for the purposes of restitution. *Compare* U.S.S.G. §2B1.1 *with United States v. Arledge,* 553 F.3d 881, 898 (5th Cir. 2008). The "standard for relevant conduct under the Guidelines is more lax than that for determining what conduct can be the basis of restitution." *United States v. Wright*, 496 F.3d 371, 381 (5th Cir. 2007). For sentencing purpose, the loss amount is determined based on conduct that occurred during the scheme. §2B1.1 However, for restitution, the "general rule is that a district court can award restitution to victims of the offense, but the restitution award can encompass only those losses that resulted directly from the offense for which the defendant was convicted." *Arledge*, 553 F. 3d at 898. Therefore, the loss value for the purposes of restitution does not ordinarily have any bearing on the propriety of the Court's loss amount calculation for the purposes of sentencing. As such, the fact that counsel retained for the restitution hearing presented different evidence than counsel at the sentencing hearing does not, by itself, demonstrate that counsel was ineffective. Nor does the sentencing court's failure to consider such evidence undermine the reasonableness of its sentencing loss amount calculation.

Second, the sentencing court's determination of the loss value was reasonable based on the record and therefore the Petitioner cannot demonstrate that he was prejudiced by counsel's failure. As the Fifth Circuit explained:

> [A]fter significant discussion between the court and Murray's counsel, the Government suggest that the court use the loss amount of $84 million that was supported by the trial testimony of Dennis Arnie, a Certified Public Accountant who studies the Premiere accounts extensively. He testified that the losses already realized at the time of trial were $67.1 million, which accounted for the $50 million that the investors recovered from the collateral and from the loans. He testified that another $17 million would never be recovered, bringing the total loss figure to $84 million. In light of the Government's concession, the district court decided to adopt $84 million as the amount of loss.

*Murray,* 648 F.3d 251, 254-55 (5th Cir. 2011) (holding "we find that the district court made a reasonable estimate of the total loss and correctly applied the guidelines"). Because the record adequately supports

the sentencing court's factual finding, Petitioner cannot show that he was prejudiced by counsel's failure to object and introduce other evidence of the loss amount.

<em>c.</em>

Finally, in the third claim of ground two for the Motion to Vacate, Murray alleges that counsel's failure to object to the enhancement because he was not the organizational leader was constitutionally ineffective assistance of counsel. Here, too, Petitioner cannot show that counsel's failure to object prejudiced the Petitioner.

Under section § 3B1.1(a), the sentencing court may increase the defendant's base offense level by four-points if the defendant is "leader/organizer" in the commission of the offense. § 3B1.1(a). In order to be a eligible for the application of the sentencing enhancement, a defendant "must have been the organizer or leader of at least one other participant" to qualify as a leader/organizer. *United States v. Ronning*, 47 F.3d 710, 712 (5th Cir. 1995). In assessing a defendant's role as a leader/organizer, the Sentencing Guidelines direct a court to consider: (1) the defendant's exercise of decision making authority, (2) the nature of the defendant's participation in the commission of the offense, (3) the defendant's claimed right to a larger share of the fruits of the offense, (4) the defendant's degree of participation in the planning or organizing of the offense, (5) the nature and scope of the illegal activity, and (6) the degree of control and authority exercised by the defendant over others. *Murray*, 648 F. 3d at 257. Based on the evidence presented, the sentencing court found that Murray was a leader/organizer. Although Murray managed the mortgage side and Lapin managed the investor side of the scheme to defraud, Murray had decision-making influence over the criminal enterprise. He was the CEO of Premiere, and there was evidence that Lapin was answerable to Murray. Accordingly, the sentencing court properly determined that Murray was a leader/organizer. As such, there is no reasonable

probability that but for counsel's failure to object to the application of the leader/organizer enhancement the outcome of the proceeding would have been different.

Accordingly, based on the facts and record, Murray claims of ineffective assistance of counsel in ground two as a matter of law is **DENIED**.

3.

In the claim for ground three for the Motion to Vacate, Murray claims that the disparity between his sentence and those imposed on the two codefendants violates his constitutional right by punishing him for electing to go to trial instead of pleading guilty. This is the same argument Murray asserted on appeal before the Fifth Circuit, which noted that the district court did take Murray's argument into account to the §3553(a) factors, pointing out:

> The Court explained the seriousness of Murray's offense and noted that the factors did not necessarily weigh in favor of a below-guidelines sentence. For example, Murray could have received a total sentence of as long as 1,572 months. The Court noted that the monetary loss understated the harm caused by Murray's crimes in some respects because the victims had also suffered "physically, mentally, [and] emotionally," some losing their life savings. This district judge stated that Murray's actions were "pathological," and that he was "arrogant and unremorseful and unrepentant for the harm that he has caused to numerous – over 500 victims in this case." Rejecting Murray's contention that he should be sentenced more leniently because he was a white-collar criminal, the district court noted that "the astounding loss amount caused by this defendant, masterminded by this defendant, has [a] far-reaching impact on hundreds of victims."

648 F.3d at 257-58. Additionally, the Fifth Circuit found the district court's sentence to be substantively reasonable, based on the statutory factors, including consideration of the lower sentences of his codefendants.

This determination by the Fifth Circuit is the "law of the case" *i.e.*, the law controlling any further proceedings, including collateral proceedings under 28 U.S.C. § 2255. *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002); *Lyons v. Fisher*, 888 F.2d 1071, 1074 (5th Cir. 1989) (Under the law of the case doctrine, "'a decision of a factual or legal issue by an appellate court

establishes the "law of the case" and must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court.'"). Under the "law of the case" doctrine, an issue of law or fact decided on appeal may not be reexamined by the district court during a collateral proceeding. *United States v. Becerra*, 155 F.3d 740, 752 (5th Cir. 1998); *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) ("It is well settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 motions."). Given that this claim was raised and rejected on direct review, the Court cannot reconsider the merits on collateral review. *United States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1997) (claims that were "raised and rejected" on direct appeal are "bared from collateral review"); *United States v. Webster*, 392 F. 3d 787, 791 n. 5 (5th Cir. 2004).

Accordingly, the claims asserted in the third ground for relief are meritless and Petitioner's request for relief is **DENIED**.

4.

In ground four of the Motion to Vacate, Murray alleges that new evidence presented to the court at the restitution hearing establishes that the loss amount used at sentencing was erroneous. This claim has already been discussed. The Court concluded that the sentencing court's determination of the loss amount was reasonable. Accordingly, Petitioner's fourth claim for relief is meritless and Petitioner's request for relief is **DENIED**.

**IV.**

The Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to § 2255 is subject to the proscriptions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), as codified in 28 U.S.C. § 2253. Under the AEDPA, a prisoner who was denied habeas relief in the district court cannot appeal that denial "unless a circuit justice or judge issues a certificate of appealability."  28

U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); *United States v. Hall*, 455 F.3d 508, 513 (5th Cir. 2006). Until a certificate of appealability issues, "federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners." *Miller-El*, 537 U.S. at 336; *Hall*, 455 F.3d at 513.

Although Murray has not yet filed a notice of appeal, the rules governing section 2255 petitions instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." R. Governing § 2255 Proc. U.S. Dist. Cts. 11. The AEDPA, permits the issuance of a certificate of appealability only where a petitioner has made a "substantial showing of the denial of a constitutional right." §2253 (c)(2); *Miller-El,* 537 at 336; *Hall*, 455 F.3d at 513. In order to sustain that burden, the Petitioner must show "that reasonable jurists could debate whether or, for that matter, agree that the § 2255 Motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336; *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002).

A district court may deny a certificate of appealability on its own, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) ("it is perfectly lawful for district courts to deny certificates of appealability *sua sponte*."). After carefully considering the record, the court concludes that jurists of reason would conclude without debate that Murray has not stated a valid claim for relief under § 2255, nor do the issues raised in his petition warrant encouragement to proceed further. Accordingly, the Court will not issue a certificate of appealability.

## VI.

For the foregoing reasons, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (**H-CR-06-247, Instrument No. 398; H-CV-13-032, Instrument No. 1**) is **DENIED**; the Respondent's Motion to Dismiss (**H-CR-06-247, Instrument No. 404**) is **GRANTED** and; the Court **DENIES** the Petitioner a Certificate of Appealability.

The Clerk shall enter this Order and provide a copy to all parties.

**SIGNED** on this the 30th day of August, 2013, at Houston, Texas.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**